UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

02 MAR 29  PM 4: 19

H.D. OF ALABAMA

| | |
|---|---|
| PELINA NELLENE BEEDLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| PHIFER WIRE PRODUCTS, INC., | ) |
| a corporation, | ) |
| | ) |
| Defendant. | ) |

Civil Action Number
00-C-0212-W

ENTERED

MAR 2 9 2002

## MEMORANDUM OPINION GRANTING SUMMARY JUDGMENT

In this action alleging a myriad of claims under the federal anti-discrimination laws and Alabama state laws, Defendant Phifer Wire Products, Inc., has moved for summary judgment.

Based on the undisputed facts, Defendant is entitled to judgment as a matter of law on all of Plaintiff's claims.

### I. Undisputed Facts

As the name implies, Defendant Phifer Wire Products is a manufacturer and seller of mesh wire products. Its products are sold and distributed in both domestic and international markets.

Plaintiff Pelina N. Beedle has a Bachelor of Arts degree from the University of Alabama and she has substantially completed the requisite hours for a Master's degree in Spanish. She was hired as a secretary in Phifer's International Department on January 18, 1993. She served as secretary to Carlos Codina and Cade Cook. Both Codina and Cook are export market managers

1

in the International Department. They report to Jeff Rivers, Direct Market Manager. Rivers, in turn, reports to John Hogue, Vice-President of Sales.

Plaintiff alleges that she was discriminated against by Cook, with the assistance of Rivers and Hogue.

Plaintiff's job duties included taking and processing the orders of customers in a timely manner. She also kept the market managers informed about the status of orders, and she worked closely with the Traffic Department and the Credit Department in insuring that orders were timely dispatched and that proper credits were maintained.

Phifer's "Harassment and Discrimination Policy" is set forth in its Employee Handbook, which states in relevant part:

> It is Phifer Wire's policy that all persons ... have the right to work in an environment free of discrimination and harassment of any kind, whether that harassment or discrimination is based upon race, creed, color, national origin, religion, age, sex, or disability. Phifer Wire absolutely prohibits discrimination and harassment of its employees by supervisors, co-workers, customers or suppliers. Violations of this policy by your supervisors or co-workers will lead to disciplinary action up to and including termination.
>
> ....
>
> Harassment includes any kind of rude or offensive behavior, whether verbal, physical or by gestures. Prohibited harassment includes harassment based upon the victim's race, creed, color, national origin, religion, age, or disability; but also includes harassment not based on any of these expressly prohibited characteristics. For example, "using threatening or abusive language toward fellow employees" is a Major Rule Violation and "intimidating, harassing, coercing, or threatening employees or members of their families" is an Intolerable Rule Violation.
>
> ...
>
> Anyone who believes he or she has been the victim of harassment or discrimination, whether by supervisors, co-employees or others, is strongly encouraged to report this rule violation to the Departmental Supervisor and/or Phifer Personnel Director, Linda Miller. .... All complaints of harassment or discrimination will be taken

> seriously and investigated promptly and thoroughly. .... Anyone who files a complaint
> will receive a report on the results of the investigation and corrective action taken.
>
> ...
>
> You can file complaints confidentially and your name will not be revealed to the
> alleged harasser. You can even report violations anonymously by sending written
> comments to your departmental supervisor or to Linda Miller ...

Defendant's Exhibit ("DX") 10, Plaintiff's Deposition ("P. Depo"). On October 1, 1995, the

Policy was amended to require that any victim of alleged harassment or discrimination must

report it to the Department Supervisor or Charlotte Lewis within three days of the incident, and

to make a failure to report incidents of harassment a Major Rule Violation.

To educate its employees on its policies, Phifer has implemented "Phifer Vision," which

according to Plaintiff, "... is a program which mandatory attendance in which all employees of

Phifer attend for half an hour once a month, and matters such as [the harassment policy] are

presented or gone over and explained." P. Depo, 86.

Plaintiff received copies of the initial policies on her first day of work. She received a

copy of the amended policies in October 1995 during a Phifer Vision session.

Phifer offers an Employee Service Program ("ESP"), which is designed to assist

employees and their families with personal problems encountered either on the job or elsewhere.

The ESP is not designed to take complaints from employees concerning discrimination or

harassment. Communications with the ESP representative are treated as confidential. Ted

Northington, Senior Vice president of Phifer, handles the ESP.

Plaintiff talked with Northington on five occasions during her employment with Phifer. In

1995 she talked with him about her evaluation, the condescending behavior and difficulty in

3

working with Cade. She told him that she felt that Cade was harassing her and discriminating against her. In her second meeting with Northington, Plaintiff talked about her Family and Medical Leave Act problem – specifically, that her evaluations cited the fact that she had taken family and medical leave. She also discussed he alleged excessive absences, *Id.* at 173. In her third meeting with Northington, Plaintiff discussed her family and medical leave problem  In 1997, Plaintiff disclosed to Northington that she felt that Cade and Hogue were harassing her about her allegedly excessive breaks. She also told Northington about her request for another computer monitor, which had not been provided. Plaintiff had her last meeting with Northington in June 1998, when she told him that Hogue's behavior towards her was so unacceptable that she was planning to talk with an attorney about the matter. During this meeting, she became so upset that she experienced a heart arrythmia and had to be rushed to the emergency room of a hospital. According to Northington, Plaintiff never told him that she felt harassed or discriminated against because of her sex, disability, age, or for taking family and medical leave.

In a 1994 conversation with Rivers, Plaintiff told him that she that she was being harassed and discriminated against by Cade because of her disabilities and her request for family and medical leave. *Id.* at 178.

Plaintiff requested a magnifying ruler when she was initially hired by Phifer. She received the ruler two or three days after she commenced her employment at Phifer. In 199, Plaintiff requested a particular kind of screen for her computer. She received this screen a few days later. She next requested a monitor compatible with the screen she had been provided. She did not receive the monitor until 1997 – four years after her request.

4

Plaintiff applied for and was granted family leave on three separate occasions to take care of her ill parents. Each time she returned from leave. Plaintiff was reinstated in her job at the same rate of pay.   Plaintiff was never denied requested family and medical leave. *Id.* at 174.

In the six months preceding her termination, Plaintiff applied for and was granted family leave. But she was required to work part-time during this period. When she was unable to report to work because of her personal illness, Plaintiff was required to provide a doctor's excuse for her absence. There was a "negative ambience" during Plaintiff's last six months at Phifer. *Id.* at 66.

Plaintiff never reported an incident of harassment or discrimination to either Linda Miler or Charlotte Lewis. *Id* at 87, 88.

On November 30, 1998, a fax came from one of Phifer's customers requesting a price quotation. Codina wrote in longhand a response to the fax and gave it to Plaintiff to process. Plaintiff typed the response letter and faxed it to the customer on December 2, 1998. The letter embodied Plaintiff's typographical error of "do days," rather than "30 days." On December 10, th customer faxed a request to Codina to "clarify the term 'do days' which was mentioned in Option One of " the December 2, 1998 letter. Codina was on vacation at the time.

On the morning of December 14, 1998, Plaintiff sent a corrected version of the letter to the customer. She re-typed the letter, then underlines and drew an arrow to "30 days." Plaintiff faxed the letter, made a coy for her chronological file, and placed the correspondence and the fax confirmation in the customers' pending file.

Rivers received and reviews copies of all income faxes for the International Department. On December 14 when he saw the December 10 incoming fax from the customer, Rivers wrote a

note to Plaintiff stating: "[P]lease let me see the original - what is he talking about?" In the meanwhile, Rivers looked in Codina's pending files and saw the December 2nd fax containing the typographical error, as well as the December 14th fax correcting the typographical error.

On the morning of December 15th, Plaintiff saw River's note. Plaintiff then went to Codina's office and removed the customer's pending file. Plaintiff proceeded to alter the original faxed response by "whiting out" the "do" and writing in "30." She also altered the yellow fax confirmation sheet, by whiting our "do" and inserting "30." Plaintiff next took the original letter, which was whited out, and made a copy of it onto white paper. She took the altered original of th yellow confirmation sheet and made a copy of it on yellow paper. She attached the copies together and placed them in the pending file. She threw the original letter and faxed confirmation sheet into the recycle bin,

After Rivers saw the file which Plaintiff had placed on his desk, he met with her and asked if she had altered the file. He indicated to her that she had committed a Major Violation under the Employee Handbook because she had altered a document. When Plaintiff asked him what he wanted her to do, Rivers told her that it would be best if she resigned because otherwise she would be fired. Plaintiff responded: " "[T]hen I will leave but I will not write you a letter of resignation." *Id.* at 70. Plaintiff then packed her personal belongings and left the premises on December 15, 1998.

On April 27, 1999, Plaintiff filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The charge states:

> I began working for Phifer Wire on January 18, 1993 as a secretary. During the latter part of 1994, I began experiencing hostility from my male supervisors. It became progressively worse when it was necessary for me to

take Family and Medical Leave due to the serious health conditions of my elderly parents. While I was on Family and Medical Leave, my supervisor, Jeff Rivers, advised me that my job was in jeopardy if I did not return to work. I was reprimanded for minor infractions and subjected to repeated harassment and intimidation by certain male members of management in retaliation for taking Family and Medical Leave, which continued until the date of my discharge.

I believe I was terminated because of my gender, female, and because I am visually impaired and have hypoglycemia which I believe were the motives for the hostility and retaliation I experienced while employed at Phifer Wire. Even though I was able to perform my duties, I was set up to fail so they could discharge me. There is also disparity in how males employees are treated co pared to female employees at Phifer Wire.

I believe I was terminated in violation of the Americans with Disabilities Act, the Family and Medical Leave Act, and in violation of Title VII of the Civil Rights Act of 1964, as amended.

DX 31, P. Depo. In the 27-paragraph affidavit accompanying her charge of discrimination, Plaintiff does not cite any adverse employment action within the preceding six months, aside from her discharge.

Plaintiff was replaced by 28-year old Bridget Hamner. Plaintiff was 54 at the time of her discharge. On one occasion, Cook stated to Plaintiff, in reference to the clothes she was wearing, that Plaintiff was not a "spring chick" anymore. On other occasions, Cook remarked in the presence of others that Plaintiff was trying to look younger. Plaintiff never complained abut these statements.

Plaintiff never heard any gender-based jokes in he workplace. *Id.* at 216. She has not testified to any other sexually inappropriate conduct in the workplace. She has never identified a similarly situated male employee who was treated differently.

The EEOC was unable to conclude that the anti-discrimination statutes were violated.

7

The Alabama State Department of Industrial Relations found that Plaintiff was not discharged nor removed from work for a dishonest or criminal act committed in connection with work. The agency rejected Phifer's defense that Plaintiff was discharged for falsification of company documents. Over Phifer's protest, Plaintiff was awarded unemployment compensation.

This lawsuit was filed on January 26, 2000.

II.

Summary judgment is appropriate only where there are no genuinely disputed material facts, and the moving party is entitled to judgment as a matter of law. The material facts, and the reasonable inferences flowing therefrom, must be viewed in a light most favorable to the party opposed to summary judgment. A "genuinely disputed material fact" exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 3327 (1986).

"[T]he summary judgment rule applies to job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." *Chapman v. AI Transport*, 229 F.3d 1012, 1026 (11th Cir. 2000).

Under Title VII of the 1964 Civil Rights Act, the Americans With Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA"), the Age Discrimination in Employment Act, 29 U.S.C. § 626 (d) (1) ("ADEA"), and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), a complaintant must file a charge of discrimination with the EEOC within 180 days of the act of discrimination, and a lawsuit within ninety days after receiving a right-to-sue letter from the EEOC. *See Chanda v. Engelhardt/ICC,* 234 F.3d 12119 (11th Cir.2000); *EEOC v. Wafflehouse, Inc,.* 122 S. Ct. 754 (2000); *Stevens v. Dpt. of Treasury,* 111 S. Ct. 1562 (1991).

The Alabama Age Discrimination Act, Ala. Code § 25-1-20 *et seq.* ("AADEA"), provides that its statute of limitations "shall be the same as those authorized by the federal Age Discrimination in Employment Act except that a plaintiff shall not be required to pursue any administrative action or remedy prior to filing suit...." Ala. Code § 25-1-29. At best, a lawsuit must be filed under AADEA not later than 270 days after the occurrence of the discriminatory act.

On claims of discrimination brought under the federal anti-discrimination laws, where circumstantial evidence is relied on by the plaintiff, the evidentiary framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) governs. Under *McDonnell Douglas*, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). If a *prima facie* case is established by the plaintiff, a legal presumption of unlawful discrimination arises and the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Id.* When such reason is articulated, plaintiff must then prove that the articulated reason is a pretext for the true reason for the challenged action - discrimination.

To establish a prima facie case of sex discrimination, a plaintiff must demonstrate that 1) she belongs to a protected class; (2) she was qualified for the position at issue, 3) she was subjected to an adverse employment action; and (4) her employer treated similarly situated employees more favorably. *See Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998). The plaintiff must show that the employees with whom she compares

herself are "similarly situated in all relevant respects." *Hollfield*, 115 F.3d at 1562. This requires
an assessment of whether the employees are involved in or accused of the same or similar
conduct and are disciplined in different ways. *Id., citing Williams v. Ford Motor Co.*, 14 F.3d
1305, 1309 (8th Cir. 1994). If a plaintiff fails to show the existence of a similarly situated
employee, summary judgment is appropriate where no other evidence of discrimination is
presented. *Id.*

To establish a prima facie case of disability discrimination under the ADA, a plaintiff
must show that 1) she has a disability, 2) she is qualified, with or without reasonable
accommodations to perform the essential functions of her job and 3) that she was subjected to an
adverse employment action because of her disability. *Terrell v. UsAir*, 132 F.3d 621, 624 (11th
Cir. 1998) *citing Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278 (11th Cir.
1997).

The ADA defines "disability" as a physical or mental impairment that substantially limits
one or more of the major life activities of such in individual, has a record of such impairment, or
is regarded as having such impairment. 42 U.S.C. § 12102(2). An individual is deemed to be
"disabled" for purposes of the ADA if he satisfies any one of these three enumerated definitions.
*Gordon v. E.L. Hamm & Assoc.*, 100 F.3d 907, 911 (11th Cir. 1996). A physical impairment,
standing alone, is not necessarily a disability as contemplated by the ADA. *Id.*

Discrimination under the ADA includes "not making reasonable accommodations to the
known physical or mental limitations of an otherwise qualified individual with a disability." 42
U.S.C. § 12112(b)(5)(A).

10

To establish a hostile work environment claim, Plaintiff must prove that 1) she belongs to a protected class or group, 2) she was subjected to unwelcome conduct, 3) the harassment complained of was based on her disability or request for accomodation, 4) the harassment complained of affected a term, condition, or privilege of employment, and 5) the employer knew or should have known of the harassment and failed to take prompt, effective remedial action. *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F. 3d 558, 563 (5th Cir. 1998).

To establish a claim of FMLA retaliation, a plaintiff must prove three elements: (1) that she availed herself of a protected right under the FMLA, (2) that she was thereafter subjected to an adverse employment action; and (3) that there is a causal connection between the protected activity and the adverse employment decision. 29 U.S.C. § 2615(a)(1) and (2). *Parris v. Miami Herald Pub. Co.*, 216 F.3d 1298, 1301 (11th Cir. 2000).

To establish a claim of constructive discharge, a plaintiff must prove that her working conditioons were "so intolerable that a reasonable person in her position would have been compelled to resign." *Griffin v. GTE Florida, Inc.*, 182 F.3d 1279, 1283 (11th Cir.1999).

Under Alabama Code §6-11-27(a) an employer will not be held liable for the wrongful acts of an agent or employee unless the employer 1) knew or should have known of the unfitness of the employee and continued to employ him or used his services disregarding the rights or safety of others, 2) authorized the wrongful conduct, or 3) ratified the wrongful conduct. Ala. Code § 6-11-27. Pursuant to this statute, a plaintiff must show "by affirmative proof that the alleged incompetence of the employee was actually known to the employer or was discoverable by the employer if it had exercised care and proper diligence." *Mills v. Wex-Tex Indus.*, 991 F. Supp. 1370, 1388 (M.D. Ala. 1997).

11

III

The undisputed facts belie Plaintiff's claim of sex discrimination. She has not shown any direct evidence of gender discrimination. She has not identified a single male employee who was treated differently in the terms and conditions of employment than she was treated. The mere fact that Plaintiff is a female and her supervisors are males does not establish the fourth element of the *McDonnell-Douglass* prima facie element. Moreover, Plaintiff has not come forward with any evidence that she was subjected to an adverse employment action because of her sex or gender.

Plaintiff has totally failed to establish the existence of a sexually hostile work environment. She has admitted that no Phifer supervisor or employee ever made any comment - derogatory or otherwise - concerning her sex or gender. She has not shown that any alleged harassment affected a term of condition of her employment.

The undisputed facts also fail to support Plaintiff's claim of disability discrimination. Although a reasonable factfinder could conclude that Plaintiff is indeed a qualified individual with a disability, there is no evidence that she was subjected to an adverse employment action because of her disability. Moreover, there is no evidence to support a finding that Defendant failed to reasonably accommodate Plaintiff's disability. Because of the 180-day limitation of the filing of a charge of discrimination, Plaintiff's claim that Defendant did not accommodate her request for a monitor for four years was dead long before this case was filed.

There is no evidence to support a finding of disability-based hostility in Phifer's workplace.

12

For want of an adverse employment action, Plaintiff has failed to satisfy one of the elements of her FMLA retaliation claims.

Plaintiff's age discrimination claim under Alabama law is time-barred. Alabama law clearly adopts the federal age discrimination law's statute of limitations, which is 270 days under the most liberal interpretation. Although the Alabama age discrimination claim, filed on May 9, 2000, relates back the initial filing date of January 26, 2000, it is to no avail since by that time Plaintiff had been terminated for over 390 days.

Plaintiff's constructive discharge claim must fail because there is no objective evidence that her working conditions were so intolerable that a reasonable person in her position would have been compelled to resign.

Plaintiff's claim of negligent training, supervision, and retention is abundantly unsupported by evidence in the record. There is no reasonable basis for a finding that Defendant's supervisors were incompetent.

By separate order, Defendant's Motion for Summary Judgment will be granted.

Done this ___29th___ day of March, 2002.

Chief United States District Judge
U.W. Clemon

13